IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.  Case Nos.:  4:13cr10/RH/CAS
    4:18cv43/RH/CAS

KIMBERLY D. WATSON,
    Defendant.

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant Kimberly D. Watson's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 and the Government's thorough response in opposition.  (ECF Nos. 232, 241.)  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After review of the parties' submissions, the court recommends that the § 2255 motion be denied without an evidentiary hearing.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## I. BACKGROUND

On January 9, 2013, a grand jury returned a 46-count indictment charging Kimberly Watson and three co-defendants with numerous offenses arising out of a conspiracy to file false income-tax returns in other persons' names. Following a five-day trial,[1] the jury found the Watson guilty of Counts 1, 2–9, 11,12, 14–16, 18–30, and 33–42, and not guilty of Counts 13, 31, and 32. The district court sentenced the defendant to a total of 48 months of imprisonment, which included a mandatory consecutive sentence of 24 months for aggravated identity theft.

The Eleventh Circuit affirmed Watson's conviction. In doing so, it declined to address suppression arguments that Watson raised for the first time on appeal, and remanded for resentencing due to the district court's error in not applying an enhancement under U.S.S.G. § 2B1.1(b)(2) for the number of victims. *United States v. Watson*, 696 Fed. Appx. 385, 387 (11th Cir. 2017) (*per curiam*).

---

[1] Counsel represented to the court in a February request for a continuance that it was anticipated that his client would plead guilty. (ECF No. 45.) From comments made at sentencing, it appears that Watson's desire to "protect" or not to heavily implicate family members factored into her inability to cooperate with the Government and thus her decision to go to trial. (ECF No. 170 at 15, 18, 21.)

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

On August 29, 2017, the court resentenced Watson to a total term of 48 months' imprisonment, below the revised applicable guidelines range. (ECF No. 226.) At this point, she had already served the prison term in its entirety. (ECF No. 226 at 3.) On January 12, 2018, Watson, who remains on supervised release, filed the instant motion to vacate, raising four grounds for relief. She contends her conviction rested on evidence obtained as a result of an unconstitutional search and seizure and the prosecution's failure to disclose evidence favorable to her, that counsel was constitutionally ineffective for not filing a motion to suppress, and that she was denied her right to appeal. The Government opposes the motion in its entirety.

## II. ANALYSIS

### A. General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated

the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   See 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

A district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).   Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.   *Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable

professional norm and that she was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688.   Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct).   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).

To prevail on her claim of ineffective assistance of counsel, a defendant must provide factual support for her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at

1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   A defendant's belief that a certain course of action that counsel failed to take might have helped her case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   See 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d

707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true, would prove she is entitled to relief.   See *Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   See *Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

    B. <u>Watson's Claims</u>

    1.   <u>Grounds One and Three—Unconstitutional search</u>

Grounds One and Three relate to the use of the fruits of an allegedly unconstitutional search and seizure and counsel's allegedly deficient performance in not moving to suppress the fruits of the search.

The court determined that that the conspiracy in this case involved tax returns claiming false refunds totaling $190,033.00, resulting in the issuance of $126,149.23 in fraudulent refunds.   (ECF No. 117, PSR ¶ 27). The refunds were initially deposited into bank accounts held by Watson and a co-conspirator, but were later issued in the form of "Green Dot" pre-paid

debit cards that were mailed to the addresses of Watson and two co-conspirators.   (*Id.,* PSR ¶ 28.)

The charges stemmed from a joint investigation involving multiple law enforcement agencies after an individual whose tax refund had been stolen contacted the Leon County Sheriff's Office.   (PSR ¶ 18.)   After an initial investigation, a state search warrant was executed in December of 2010 at the home shared by Watson and another co-conspirator.   (PSR ¶ 23.) Law enforcement seized a laptop but found no direct evidence of the filing of fraudulent tax returns at that time.

In May of 2011, the United States Postal Service began seizing Green Dot pre-paid debit cards that were sent to addresses not associated with the names on the cards.   (PSR ¶ 24.)   Many of these cards were sent to a residence shared by Watson and her co-conspirator, as well as another address within the same apartment complex.   Law enforcement orchestrated a controlled delivery of a fraudulent tax refund to a mailbox at the complex, and when the co-conspirators retrieved the fraudulent refund card, a traffic stop was initiated.   Watson and another co-conspirator were detained due to evidence of unlawful fraudulent activity in plain view in the vehicle.   Law enforcement then obtained and executed search warrants for

the vehicle as well as two different apartments associated with the investigation.   Following the execution of the warrant at Watson's apartment on July 15, 2011, she was arrested.

In Ground One, Watson complains that the Government did not introduce at trial copies of the search warrants executed at her residence in December of 2010 and July of 2011.   (ECF No. 232 at 7.)   According to Watson, the Government's reliance on the testimony of officers involved in the execution of the warrants, without presenting the supporting documentation, "should raise questions of their authenticity."   (*Id.*)   Watson acknowledges that the executing deputy, Andrew Dawson of the Leon County Sheriff's Office, left copies of the warrants at both residences, but states she stored the copies of the warrants in her sister's garage, which later burned down.   (*Id.* at 8.)   When she obtained copies of the warrants after her trial, she claims to have "discovered that the signatures of the three warrants [counsel] produced was inconsistent…[and she has] reason to believe the warrants was (sic) forged."   (*Id.* at 7.)   She claims that the whole case against her "was manufactured by crooked cops" and that the investigation was "racially motivated."   (*Id.* at 8.)

Watson's unsubstantiated "belief" that the warrants were forged does not raise the specter of a constitutional violation, and she offers nothing else in support of this claim. Furthermore, her claim in Ground Three that counsel was constitutionally ineffective because he did not file a motion to suppress the evidence against her likewise does not pass muster because she cannot show prejudice.

When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, to demonstrate actual prejudice, the defendant must prove that her Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th Cir. 2010). Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded. *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King,* 95 F.3d 1052, 1058–59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987); *see also Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005). In

this case, the court can discern no viable ground for counsel to have raised in a motion to suppress. Watson's allegation that there "was also evidence available to believe that the validity of the warrants was questionable" is conclusory. (ECF No. 232 at 11-12.) Counsel is not constitutionally ineffective for declining to preserve or argue a meritless claim, or file a meritless motion. See *Denson*, 804 F. 3d at 1342; *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue). Watson was not prejudiced by counsel's decision not to file a motion to suppress because such a motion would not have succeeded. She is not entitled to § 2255 relief.[2]

    2. Ground Two—Brady Violation

---

[2] Watson makes other claims against counsel including that he was "in cahoots with the corrupt cops," he held "hatred" towards her that was possibly "racially motivated," although she admitted having "no reason to believe Mr. Morris is a bigot and a racist, based off [her]interactions with him" but is merely speculating to explain his behavior. (ECF No. 232 at 11.) She also claims Morris took advantage of her mental state and preyed upon her during the most difficult time in her life, had malicious intent in handling her case and "never at any point had intentions to represent [Watson] effectively." (*Id.* at 12.) Before trial, counsel filed a "Request for Judicial Inquiry" requesting that the court conduct an inquiry into Watson's dissatisfaction with his representation. (ECF No. 72.) The court held a hearing following which it declined to remove Morris from the case. (ECF No. 78.) The hearing was not transcribed. In any event, the undersigned finds that none of her allegations, each of which was rebutted by counsel, (*see* ECF No. 241-1) provide her with relief.

Watson's second ground for relief appears to be that the prosecution's failure to provide copies of the search warrants was unconstitutional. This claim is again premised on her belief that the search warrants were invalid or somehow exculpatory.

In *Brady v. Maryland* the Supreme Court held that suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. 83, 87 (1963). It is no longer imperative that there be a request for the production of such evidence. *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995). However, the burden rests with the defendant, not the Government to show that a violation has occurred. *United States v. Stein*, 846 F. 3d 1135, 1145 (11th Cir. 2017) (quoting *United States v. Esquenazi*, 752 F. 3d 912, 933 (11th Cir. 2014)).

To prove a *Brady* violation, a defendant must show that: (1) the prosecution possessed evidence favorable to the accused (including impeachment evidence); (2) the defendant did not possess the evidence nor could she have obtained it herself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different, that is, that the evidence was "material." *United States v. Stein*, 846 F. 3d 1135, 1145-46 (11th Cir. 2017) (quoting *United States v. Vallejo,* 297 F.3d 1154, 1164 (11th Cir. 2002)); *United States v. Schlei*, 122 F.3d 944, 989 (11th Cir. 1997).

Watson has not offered anything but speculation to support her assertion that the search warrants were "favorable" evidence, or that presentation of the warrants at trial would have changed the outcome of the proceedings. She admitted having been provided with copies of the warrants at the time they were executed, although they were destroyed in a fire. She has not shown a constitutional violation and she is not entitled to relief.

3. Ground Four—Denial of Right to Appeal

Watson states that after sentencing, counsel advised her, in the presence of three of her friends, that she had received a fair sentence and an appeal would not have merit. (ECF No. 232 at 14.) Watson recalls that she told counsel she wanted to file an appeal anyway. She states that when she learned a few days later that counsel had not followed her

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

instructions, she filed the notice of appeal pro se.  She claims that counsel's failure to file the notice of appeal proves the conflict of interest between her and her attorney, and his "attempts to sabotage her in every way possible."

Counsel's recollection is slightly different.  In his affidavit, Morris recalls a post-sentencing discussion with Watson and several friends outside the courtroom during which he "affirmatively advised that an appeal would be unwise."  (ECF No. 241-1 at 4.)  Counsel's advice was based on his concern that the trial court had made a sentencing error in Watson's favor.  He recalled that everyone present was "in complete agreement that an appeal should not be taken out of concern for a more adverse consequence."  (*Id.*)  Morris had no further conversations with Watson about an appeal, until learning that she had filed her pro se notice of appeal.  Morris attempted to work with Watson throughout the process of filing an initial brief, but they disagreed on the matter of the suppression issue.  Watson wanted him to raise it, although counsel advised it had not been preserved for appeal and there was no legal basis to make such an argument.  Watson complained to the Eleventh Circuit, who appointed alternate counsel.  The appeal was unsuccessful.  Not only were the

arguments raised by the defense found to be without merit, but the case was reversed and remanded for resentencing based on the Government's cross-appeal. Watson's sentencing exposure was greater after remand, but the court departed from the revised guideline range and imposed the same sentence.

Watson has styled her claim as a "denial" of the right to appeal. However, from her own description it is obvious that she was not prejudiced by counsel's alleged disregard for her instructions, because she timely filed a notice of appeal. Her case was thoroughly briefed and the Eleventh Circuit issued a comprehensive, albeit unfavorable, opinion. She was not denied her right to appeal and she has not shown counsel was constitutionally ineffective.

### III.  CONCLUSION

An evidentiary hearing is not necessary to resolve Watson's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877. She has not responded in opposition to the Government's response and former counsel's thorough affidavit. Therefore, based on

the foregoing discussion, the court finds that Watson has not shown that any of the claims raised in her motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Therefore, her motion should be denied in its entirety.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (ECF No. 232) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 26th day of February, 2020.

<u>s/ Charles A. Stampelos</u>
   **CHARLES A. STAMPELOS**
   **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 4:14cr64/RH/CAS; 4:17cv576/RH/CAS